UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Richard Coleman

    v.                                    Civil No. 11-cv-359-JL

Ford Motor Company

**SUMMARY ORDER**

Plaintiff Richard Coleman, proceeding pro se, moves to quash subpoenas that the defendant, Ford Motor Company, has caused to issue to several third parties to this products liability action.[1]  See Fed. R. Civ. P. 45(b)(3).  Coleman argues that, through the subpoenas, Ford is "abusing and misusing discovery to harass, intimidate, and bully" him and his "family, neighbors, and business associates."  The motion is denied.

As the basis for this action, Coleman claims that he sustained injuries when the jack he had used to elevate part of the front end of his 1993 Mercury Tracer (a jack which he says was "standard equipment" for that vehicle) "collapsed," causing

---

[1] The court notes that Coleman's filing violates this court's "Order After Preliminary Pretrial Conference," which sets forth an informal method for resolving discovery disputes and provides that, if a party nevertheless wishes to file a formal discovery motion, it must expressly request referral to the Magistrate Judge.  Order of Sept. 20, 2011 (document no. 15).  Coleman's motion fails to do so, but, in light of his pro se status, the court has considered the motion nonetheless.

the car to fall onto his right arm.  He alleges that his son
Sean Coleman and a neighbor, Sonya Fugere, among others, came
to his aid in the wake of the accident and ultimately succeeded
in lifting the car off of him.  Coleman purchased the car from
Capitol Auto Auction in Manchester, New Hampshire, and, at some
point, had work done on it at Valencia's Garage in Nottingham,
New Hampshire.

In light of these facts and allegations, Ford, not
unsurprisingly, has issued subpoenas for the depositions of
Sean Coleman and Sonya Fugere, see Fed. R. Civ. P. 45(a)(2)(B),
and for production of the records of Capitol Auto and
Valencia's Garage relating to the subject vehicle, see Fed. R.
Civ. P. 45(a)(2)(C).  Significantly, none of these persons has
moved to quash or otherwise sought relief from the subpoenas on
any ground (according to Ford, in fact, Valencia's has already
responded to the subpoena served on it by stating that it does
not possess any of the sought-after records, so Coleman's
motion is moot insofar as it seeks to quash that subpoena).
Yet Coleman argues, in support of his motion to quash, that the
subpoenas will cause him undue burden and seek information that
is "redundant" in light of other discovery that Ford has
already received in the case, viz., reports by emergency

2

personnel who responded to the accident, Coleman's medical records, and the bill of sale for the vehicle.

As Ford points out, however, the subpoenas will cause Coleman no burden, undue or otherwise.  While he is free to attend the third-party depositions, he is under no obligation to do so, nor to review any documents produced in response to the subpoenas.  In any event, Coleman cannot seriously claim that, by seeking information about the accident or his resultant injuries from witnesses who arrived on the scene immediately after the accident occurred, or about the subject vehicle from the very business that sold it to him, Ford is "abusing and misusing" the discovery process.  Under the Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  That standard readily encompasses the subjects about which Ford seeks to inquire through the subpoenas.

This conclusion holds, moreover, despite the fact that Ford may have obtained some information about the subject vehicle, the accident, and Coleman's injuries through other means.  Indeed, the third-party witnesses whom Ford has subpoenaed arrived at the accident scene prior to emergency personnel, and may well have observed matters that they did

3

not.  The bill of sale is likewise no substitute for other records that Capital Auto may possess about the condition or prior ownership of the subject vehicle.

Finally, Coleman complains that the subpoena directed to his now-adult son, Sean, will subject him to "undue burden or expense" in violation of Rule 45(c)(1), because Sean "resides more than 400 miles from the site of the deposition, [and] does not have the means to travel [there], nor could he do so, without jeopardizing the job that he began just two weeks ago." If this is true--and Ford says it isn't, based on Coleman's deposition testimony that his home was also his son's address-- then it is Sean Coleman, not his father, who needs to move to quash or modify the subpoena (or on the related basis that the subpoena, which was apparently served upon Coleman at his home address, was not properly served).  Again, Sean Coleman has not done so and, unless and until he does, the court cannot grant him any relief.[2]

Accordingly, Coleman's motion to quash (document no. 22) is DENIED.

---

[2]To provide guidance to the parties, the court notes its preliminary view that, if Sean Coleman in fact now resides several hundred miles from New Hampshire as his father claims, then he cannot be compelled to travel to New Hampshire solely to appear at a deposition.  See Fed. R. Civ. P. 45(c)(3)(A)(iii).

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  July 17, 2012

cc:  Richard Coleman, pro se
     James M. Campbell, Esq.
     Trevor J. Keenan, Esq.