UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Richard Coleman

v.                                    Civil No. 11-cv-359-JL

Ford Motor Company

### SUMMARY ORDER

Richard Coleman, proceeding pro se and in forma pauperis, brings this products liability action against Ford Motor Company. He seeks to recover for injuries he claims to have suffered when the jack he used to elevate the front end of his Mercury Tracer "collapsed," causing the car to fall onto his right arm.  On her initial review of the complaint, see L.R. 4.3(d)(1)(B), Magistrate Judge McCafferty recommended that Coleman be allowed to proceed on claims of strict products liability and failure to warn.  Order of Aug. 19, 2011.  This court has jurisdiction over this action between Coleman, a New Hampshire citizen, and Ford, a Delaware corporation with its principal place of business in Michigan, under 28 U.S.C. § 1332(a)(1) (diversity).

Both parties have moved for summary judgment.  See Fed. R. Civ. P. 56.  Coleman seeks partial summary judgment as to liability, while Ford seeks summary judgment as to all of Coleman's claims.  Although more than three months have passed since Ford filed its motion for summary judgment, Coleman has not filed any response.  Coleman's own motion for summary judgment,

which he filed nearly two months before Ford's, merely reiterates the allegations of his complaint, without referring to any record evidence.  So it is neither a properly supported motion for summary judgment nor an effective opposition to Ford's motion for summary judgment under Rule 56, which requires record support for a party's assertions "that a fact cannot be or is genuinely disputed."  Fed. R. Civ. P. 56(c)(1).

Even in the absence of any opposition to a summary judgment motion, however, the court "must assure itself that the moving party's submission shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7 (1st Cir. 2002) (quotation marks omitted).  Ford's submissions in support of its motion readily make that showing.  In particular, they show that Coleman has no proof of at least one essential element of each of his claims, entitling Ford to summary judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

To prevail on a claim of strict products liability, as Judge McCafferty explained in her report and recommendation, a plaintiff must prove that (1) the defendant sold the product in a defective condition unreasonably dangerous to the user, (2) the defendant is engaged in the business of selling such a product,

2

and (3) the product was expected to and did reach the user without substantial change in the condition in which it was sold. Order of Aug. 19, 2011, at 7 (citing Brochu v. Ortho Pharm. Corp., 642 F.2d 652, 654 (1st Cir. 1981) (quoting Restatement (Second) of Torts § 402A (1967))). Here, as Ford points out, Coleman has no evidence that the jack reached him without substantial change in the condition in which it was sold. Coleman bought the Tracer, a 1993 model, at a public auto auction in 2010, and admitted at his deposition that he did not know, and has no information about, whether the jack that originally came with the car had ever been replaced at any time in the intervening 17 years.

Coleman testified that he believed the jack that collapsed in his accident had never been used previously based on "the appearance of the jack and the way it was still in the holster," which "seemed new." But it does not follow that this jack was the same one that Ford initially provided with the Tracer, replaced or, for that matter, that the jack that collapsed had ever been sold by Ford, as opposed to someone else. Even putting that aside, however, Coleman's description of the contents of the holster is inconsistent with the diagram set forth in the owner's manual for the 1993 Tracer. Coleman testified that, when he removed the jack from the trunk just prior to the accident, "the

3

handle was also in the packet in the holster."  But the owner's
manual shows that the jack handle was not originally placed in
any "holster," but affixed to the floor of the trunk separate
from the jack.  Indeed, based on the diagram at least, the handle
seems much too long to fit under the access panel that covers the
jack and "tool bag," and even the jack itself is placed outside
of that bag.  Moreover, while it might well be possible to
determine the provenance and the condition of the jack involved
in Coleman's accident by examining the jack itself, that cannot
happen here.  Coleman sold the vehicle--and the jack--to another
person after the accident, without taking any pictures, and has
never heard again from the buyer despite sending a letter
offering to re-purchase the jack after he filed this lawsuit.

     "The burden of proof that the product was in a defective
condition at the time that it left the hands of the particular
seller is upon the injured plaintiff; and unless evidence can be
produced which will support the conclusion that it was then
defective, the burden is not sustained."  Restatement (Second) of
Torts § 402A cmt. *g* (1965).  Here, as just discussed, there is no
evidence that the jack reached Coleman--some seventeen years
after Ford originally sold the vehicle--without substantial
change in its condition or, for that matter, that Ford even sold
the jack in the first place.  Because Coleman cannot prove this

4

essential element of his strict liability claim, Ford is entitled to summary judgment.  See Brown v. Husky Injection Molding Sys., Inc., 751 F. Supp. 2d 298, 303-04 (D. Mass. 2010) (granting summary judgment to defendant on strict products liability claim where plaintiff could not rebut manufacturer's evidence that the condition of the product at the time of delivery differed from its condition at the time of the accident or to "account for the condition" of the product during the lengthy intervening period).

Ford is also entitled to summary judgment on Coleman's failure-to-warn claim.  A decal affixed to the jack supplied with a 1993 Mercury Tracer (assuming, despite the evidentiary gap just discussed, that Coleman's accident even involved that jack) contained instructions for using it.  These included (1) to set the parking brake, (2) to raise the vehicle until the tire was no more than 1.2 inches off the ground, and (3) "caution:  do not get under vehicle when supported by jack alone."  The decal also referred to the "detailed jacking instructions" set forth in the owner's manual.  Those included a warning that "when one front wheel is lifted off the ground, . . . the park position . . . will [not] prevent the vehicle from moving and possibly slipping off the jack," so that, "to prevent the car from moving while changing a tire, always set the parking brake fully and always

block (in both directions) the wheel that is diagonally opposite the wheel being changed."  The owner's manual also warned:

> To lessen the risk of personal injury, do not put any part of your body under the vehicle . . . .  The jack is only for changing the tire in emergencies.  Never raise your vehicle by using a bumper jack.  The . . . jack could slip and you could be injured.

Coleman's accident occurred after he used the jack to elevate the front passenger wheel of the car so that he could remove two bolts that, according to a mechanic, he needed to remove to fix the calipers.  Without first setting the parking brake, and after blocking the rear driver's side tire in just one direction, Coleman used the jack to raise the front passenger's side tire 3-6 inches off the ground, reached under the car with his arm and shoulder, and reached up with a socket wrench to try to turn one of the bolts.  As he did so, "the jack collapsed inward," in his words, which he explained as "the jack falling to the inside of the vehicle" and onto his arm.  After the accident, Coleman examined the jack, and found that it was in the same open position it had been before the accident, and was not bent, broken, or even scratched.  Indeed, it was in good enough shape that Coleman saw fit to sell it to someone else without warning that person about what had happened.

Based on Coleman's account, a Ford design engineer who has been designated as an expert witness in this matter opines that

6

the vehicle rolled off the jack and onto Coleman's arm due to the
upward force applied by his wrench, rather than any failure of
the jack.  In other words, the accident happened just as Ford had
warned it could:  the jack slipped after Coleman had used it to
raise the vehicle to make a repair, rather than to change a tire,
and did so without setting the parking brake or blocking the
diagonally opposite tire in both directions, and by reaching part
of his body under the vehicle.  Coleman has not come forward with
evidence that the accident happened for any other reason.

    To recover on his failure-to-warn claim, Coleman must show,
among other things, that the accident would not have happened had
Ford adequately warned him of the danger of using the jack.  See
Brochu, 642 F.2d at 659; Bartlett v. Mut. Pharm. Co., 731 F.
Supp. 2d 135, 145-46 (D.N.H. 2010).  He cannot make that showing
here, where Ford warned him of the danger of using (or misusing)
the jack in a certain way, he proceeded to use the jack in that
way, and the very danger of which Ford had warned came to pass,
causing his injury.  Ford is entitled to summary judgment on the
failure-to-warn claim.

    For the foregoing reasons, Coleman's motion for summary
judgment (document no. 18) is DENIED, and Ford's motion for
summary judgment (document no. 21) is GRANTED.  The oral

arguments scheduled for October 11, 2012 are CANCELLED.  The
clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  October 5, 2012

cc:  Richard Coleman, pro se
     James M. Campbell, Esq.
     Trevor J. Keenan, Esq.

8